UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

SHAQUILL BATTLE,

                                   Plaintiff,              9:25-CV-1534
                                                          (BKS/PJE)
                    v.

NURSE BIOREFRENCE, et al.,

                                   Defendants.

─────────────────────────────────────

APPEARANCES:                                      OF COUNSEL:

SHAQUILL BATTLE
Plaintiff, pro se
15-B-2077
Gouverneur Correctional Facility
Scotch Settlement Road
P.O. Box 480
Gouverneur, NY 13642

BRENDA K. SANNES
Chief United States District Judge

**DECISION AND ORDER**

## I.    INTRODUCTION

The Clerk has sent to the Court for review a complaint filed by pro se plaintiff Shaquill

Battle ("plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims arising out

of his confinement in the custody of the New York State Department of Corrections and

Community Supervision ("DOOCS").  Dkt. No. 1 ("Compl.").  Plaintiff, who is presently

confined at Gouverneur Correctional Facility ("Gouverneur C.F."), has not paid the statutory

filing fee and seeks leave to proceed in forma pauperis ("IFP").  Dkt. No. 6 ("IFP Application").

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[1]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) *and Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York.  Dkt. No. 3.  Plaintiff's IFP Application (Dkt. No. 6) is granted.

## III.    DISCUSSION

### A.  Governing Legal Standard

Having found that plaintiff meets the financial criteria for commencing this action IFP, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii)

---

[1]  Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915(g).  The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear from that review that plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must

3

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

### B. Summary of the Complaint

The complaint alleges wrongdoing that occurred at Clinton Correctional Facility ("Clinton C.F.") and Gouverneur C.F. *See generally* Compl. The following facts are set forth as alleged by plaintiff in his complaint.

#### 1. Clinton C.F.

On or about December 30, 2024, plaintiff was called to the medical department for a "TB test." Compl. at 6, 10. Plaintiff objected and "unequivocally relayed" that he took a test in November 2024. *Id*. at 6. Defendant Nurse Biorefrence ("Biorefrence") injected "hot fluid" into plaintiff's arm that "made [him] jump." *Id*. at 6, 10. Due to the injection, plaintiff suffered from headaches, sleep loss, a "permanent twitch," and loss of range of motion. *Id*. at 6. Plaintiff filed a complaint with defendant Deputy Superintendent of Health Harrigan ("Harrigan") and "corresponded at least 9 letters." *Id*. at 7.

While confined at Clinton C.F., plaintiff was treated by defendants Nurse Kim ("Kim") and Doctor May ("May").  *See generally* Compl.  Kim provided cough syrup and medication for chest pain.  *Id.* at 7.  When plaintiff complained about a migraine, Kim "laughed."  *Id.* During a visit with May, the doctor conducted a "breathing test" using a stethoscope and noticed a mass on plaintiff's "lat [sic] or arm area."  *Id*.  At the time, plaintiff was "covered in puss-filled bumps" due to the "poison" administered by Biorefrence.  Compl. at 10.  May told him that the bumps may be an allergy.  *Id.* at 7.  However, when plaintiff asked May if he could show her the rest of his body, she refused.  *Id.*  During a second visit with May, on April 12, 2025, plaintiff was "spitting green phlegm" and presented with high blood pressure and more "bumps."  *Id*.  May said she would "write a script" but plaintiff did not receive any medication, including Tylenol.  Compl. at 7.

From February 2025 until March 2025, plaintiff was denied recreation.  Compl. at 11, 15.  From February 2025 until April 2025, due to an "illegal lockdown," plaintiff's meals were served on dirty trays without a dessert, drink, or vegetables.  *Id*.  Inmates received moldy meat, wet bread, spoiled fruit and milk, and hard rice that was cold and "broke [plaintiff's] teeth."  *Id*.  Plaintiff's trays were served through the "feed up slot" in his cell, which was covered with mucus and feces.  Compl. at 13.  Plaintiff refused "over 9 meals" and "nobody logged it" or provided plaintiff with Ensure.  *Id*. at 12.  Plaintiff suffered from diarrhea, stomach pain, headaches, and dry mouth.  *Id*.  Plaintiff was "starving" until he was able to receive commissary.  *Id*.  However, plaintiff's commissary credits were "robbed."  Compl. at 12.

On March 12, 2025, plaintiff received a misbehavior report and was transferred to the Special Housing Unit for 158 days.  Compl. at 10.  Defendant Superintendent M.J. King ("King") and the Deputy Superintendent for Security ("DSS") were present in the SHU when

plaintiff arrived and "heard his clear objections" to being housed in the unit. *Id*. When he arrived, plaintiff was strip searched by Sergeant Martin[2] and forced to face a wall, naked, for twenty minutes. *Id*. at 10. The windows were open and, as a result, his hands froze. *Id*.

While in the SHU, plaintiff did not receive the "minimum standards" which included "three sets of everything." Compl. at 9-10. Plaintiff was "stocked" with only the clothes on his body and did not have a pillow, headphones, books, a sweater, or footwear. *Id*. Plaintiff stood in his socks in piles of dirt, garbage, and feces. *Id*. at 10-11. The cell was covered in dirt and "snot and mucus." *Id*. Plaintiff complained to Minkler, who responded, "you ain't getting [expletive]." *Id*. at 10.

On March 15, 2025, defendant Correctional Officer Minkler ("Minkler") brought plaintiff a tray marked "hospital." Compl. at 11. Plaintiff refused the meal and Minkler laughed. *Id*. at 12.

On March 18, 2025, defendant Correctional Officer Friend ("Friend") escorted plaintiff to recreation. Compl. at 8. Plaintiff was directed to put his personal property into a bin. *Id*. At approximately 9:30 a.m., plaintiff spoke with an area sergeant and asked about retrieving his legal property "that was stored." *Id*. Defendant Officer Hitts ("Hitts") gave plaintiff "several envelopes that were torn or damaged." *Id*. at 9. Plaintiff's storage bags were "cut at the bottom" which resulted in items falling out. *Id*. Hitts destroyed his personal property and, as a result, plaintiff had to "forfeit a claim" in "the state." Compl. at 9.

Plaintiff "grieved" his issues involving medical treatment and his conditions of confinement, to defendants King and the DSS. Compl. at 7-8. Plaintiff sent mail and made telephone calls. *Id*. at 7-8. King referred his mail to "another person." *Id*. at 8. Plaintiff also

---

[2] Martin is not identified as a defendant in the caption or list of parties.

contacted defendant Commissioner Daniel Martuscello, III ("Martuscello") by mail and telephone, but he did not respond. *Id*. at 7, 19. Instead, Martuscello asked defendant Carol D. Moores ("Moores") to respond. Compl. at 7. Moores told plaintiff to "relay this to [his] care provider." *Id*. Plaintiff also contacted the Office of Special Investigations ("OSI"). *Id*. Defendant OSI Investigator "came to see" plaintiff and told him he "would get me to medical." Compl. at 8.

### 2. Gouverneur C.F.

On April 22, 2025, plaintiff was transferred to Gouverneur C.F. Compl. at 15. When plaintiff received his property from Clinton C.F., he noticed that paper, food, clothing, hygiene items, electronics, and photographs were missing. *Id*. at 16. Friend and Hitts failed to store plaintiff's property or intentionally sole items. *Id*.

From April 25, 2025 until October 2025, defendants Correction Officers Constigan ("Constigan"), Glandeur ("Glandeur"), Carr ("Carr"), Showers ("Showers"), Milsap ("Milsap") and McDonald ("McDonald") served plaintiff with trays that were "marked with tape" and contained food and drink that was tampered, contaminated, or spoiled. Compl. at 16-25. Some of the trays contained blood, dead bugs or maggots. *Id*. When they served the trays, defendants used racial slurs and verbally harassed plaintiff. *Id*. As a result, plaintiff refused food. *Id*. Plaintiff vomited, "broke out" with bumps on his arms, suffered from chest pains, itching on his head and neck and shoulders, and "had to use the bathroom 3 times in 1 hour." Compl. at 16-25. On April 30, 2025, defendant Correction Officer McDonald ("McDonald") served a meal that was tampered with and said, "they say your [sic] an [expletive] in your last jail." *Id*.

On April 30, 2025, plaintiff complained about the food to defendant Sergeant Hull ("Hull").  Compl. at 20.  Hull stated that he would supervise the meals, but he never followed through.  *Id*.  Defendants' "conduct" caused plaintiff to file a complaint in the wrong jurisdiction and interfered with plaintiff's complaint in the Western District of New York.  *Id*. at 17.

On May 21, 2025, defendants Correctional Officer Lynch ("Lynch"), Milsap, Constigan, and Glandeur "ransacked" plaintiff's cell.  Compl. at 18.

On September 3, 2025, the "executive team," including defendant Superintendent Rockwood ("Rockwood"), "walked around."  Compl. at 23.  Plaintiff yelled to Rockwood who responded that he "did not know anything."  *Id.*  Plaintiff wrote to Rockwood "over 10 times." *Id*.  Plaintiff wrote to defendant Supervisor McCormick ("McCormick"), four times, and did not receive a response.  *Id*.  Plaintiff attempted to file grievances with defendant Ms. Hutchins ("Hutchins"), but she refused to accept the grievances.  Compl. at 22-24.  Hull made rounds every day from June through August and "never did anything to assist [plaintiff] in filing complaints."  *Id.*

While confined at Gouverneur C.F., plaintiff submitted sick call requests complaining of chest and side pain, a "mass growing on his left side, black and red "itchy" bumps, and "green phlegm" and was treated by defendants Nurse Woods ("Woods"), Nurse Coffey #1 ("Coffey #1"), and Nurse Coffey #2 ("Coffey #2").  *See generally* Compl. and Dkt. No. 4. When plaintiff saw Woods, she ordered blood drawn for allergy testing.  Compl. at 18. However, Woods refused to test for "infection or cancer" and said, "it is not serious."  *Id.* Woods told plaintiff he had, "nothing to complain about" and refused to treat him for his chest/side pain, phlegm and rash that resulted from food issues.  *Id.* at 20-21.  Plaintiff told

Coffey #1 that Tylenol did not alleviate his pain and she said, "if it doesn't work, it doesn't work" and walked away. Compl. at 21. Woods, Coffey #1, and defendant Nurse Coffey #2 ("Coffey #2") repeatedly ignored plaintiff's sick call requests related to pain, vomiting, and other medical issues associated with ingesting contaminated food and his refusal to eat. Compl. at 22-24. On one occasion, Coffey #2 came to plaintiff's cell, took his temperature, laughed, and did nothing else. *Id*.

While confined at Gouverneur C.F., plaintiff was not permitted to possess religious study materials or magazines and was not permitted to "receive Jehovah witness." Compl. at 25-26.

Construed liberally[3], the complaint contains the following: (1) claims related to plaintiff's First Amendment right to religious freedom; (2) Eighth Amendment conditions of confinement; (3) Eighth Amendment deliberate medical indifference claims; (4) Fourth Amendment claims related to illegal searches; (5) First Amendment access-to-court claims; (6) Fourteenth Amendment due process claims related to an unwanted injection and property; (7) constitutional claims related to the grievance process; and (8) state law claims. *See* Compl. at 27-31. Plaintiff seeks compensatory damages and injunctive relief. *Id*. at 27. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

---

[3] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. S*ee, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

### C.  Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp*., 885 F.Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).  As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983.  *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").

In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). This is true even for supervisory officials. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability.").  "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' "  *Id*. (quoting *Iqbal*, 556 U.S. at 676).

10

### 1. Rule 10

The complaint contains allegations related to individuals who are not identified in the caption, or list of parties, as defendants. *See* Compl. 10, 13, 15, 16, 18, 20, 21, 23, 24. Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S*., No. 10-CV-0141, 2014 WL 3858398, at \*2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

Accordingly, plaintiff's allegations against any individual who is not named or identified in the amended complaint or caption, as John Doe or otherwise, are dismissed for failure to state a claim. *See Whitley v. Krinser,* No. 06-CV-0575, 2007 WL 2375814, at \*1 (W.D.N.Y. Aug. 15, 2007); *Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at \*1 n.1 (D. Conn. Mar. 17, 2006) ("Because the John and Jane Does are not listed in the caption of the Complaint, they are not defendants and the court does not consider claims against them.").

### 2. Defendant C.O. Gallagher ("Gallagher")

Plaintiff identifies Gallagher as a defendant in the caption. However, this defendant is not referenced anywhere in the body of the complaint and the pleading lacks factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated plaintiff's constitutional rights. Thus, the complaint fails to state a cognizable claim against this defendant. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, \*1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where

a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl,* No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

### 3. First Amendment – Religious Freedom

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause" (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

"In the prison context, however, 'the right to free exercise of religion' is balanced against 'the interests of prison officials charged with complex duties arising from administration of the penal system.' " *Kravitz v. Purcell*, 87 F.4th 111, 127-28 (2d Cir. 2023) (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). Thus, "an infringement of the free exercise of religion [may be] permissible . . . if it is 'reasonably related to legitimate penological interests.' " *Id*. (quoting *Benjamin*, 905 F.2d at 574). "[T]o assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate

penological objectives." *Kravitz*, 87 F.4th at 128 (alterations adopted) (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)).

Plaintiff claims that he was not allowed to possess religious study materials or magazines and was not permitted to "receive Jehovah witness." Compl. at 25-26. Initially, the Court notes that plaintiff has not identified his religious beliefs and the complaint lacks facts suggesting that his religious beliefs were "sincerely held." Moreover, plaintiff has not plead when, how, or for how long his right to practice his religion was infringed. Further, even assuming plaintiff identified his religious beliefs and plead facts suggesting that his right to practice was infringed, the complaint fails to suggest that any named defendant was personally involved in the constitutional violations. Thus, plaintiff's First Amendment religious claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Eighth Amendment Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter,* 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173 (1976).

### a. Conditions of Confinement

While the United States Constitution " 'does not mandate comfortable prisons,' . . . neither does it permit inhumane" treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "To demonstrate that the conditions of confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d

468,480 (2d Cir. 1996) (citation omitted).  To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' "  *Jolly*, 76 F.3d at 480 (citation omitted).  "[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).  The Constitution requires "that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it' [and] under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' "  *Jolly,* 76 F.3d at 480 (citation omitted).  To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety."  *Walker*, 717 F.3d at 125.

### i.    Clinton C.F.

Plaintiff claims his Eighth Amendment rights were violated because (1) he was denied recreation; (2) he endured unconstitutional conditions of confinement in his cells; and (3) he was served spoiled and contaminated food.  *See* Compl. at 11-12, 15.

With respect to the claims related to recreation, plaintiff has failed to plead facts related to who denied plaintiff recreation and how often he was denied recreation and whether.  Indeed, the complaint lacks any connection between any named defendant and plaintiff's ability to participate in recreation.

14

With respect to plaintiff's food, the complaint lacks facts related to who provided contaminated or tampered meals from February 2025 until April 2025. While plaintiff claims that Minkler brought him a tray "marked hospital" on one occasion, the complaint lacks facts suggesting that the food on the tray was contaminated, spoiled, or otherwise caused plaintiff to suffer from any injury.

With respect to plaintiff's SHU confinement, the complaint lacks facts suggesting that any named defendant was responsible for the conditions in the SHU. While plaintiff claims that "Minkler said you ain't getting [expletive]," in reference to the conditions of his cell, the complaint does not indicate when this exchange occurred, in what context, how often and when plaintiff complained to Minkler or any other information that would allow the Court to conclude that Minkler was responsible for plaintiff's conditions on any date.

For the reasons set forth herein, plaintiff's Eighth Amendment conditions-of-confinement claims related to Clinton C.F. are dismissed without prejudice.

### ii.    Gouverneur C.F.

At this juncture, the Court directs Constigan, Glandeur, Carr, Showers, Milsap, McDonald, Hull, Rockwood, and McCormick to respond to plaintiff's Eighth Amendment condition-of-confinement claims. This is not a ruling on the merits and the Court expresses no opinion whether these claims can survive a properly filed motion to dismiss or for summary judgment.

### b. Deliberate Medical Indifference

The Eighth Amendment mandates that prison officials provide adequate medical care to inmates. *See Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011). "An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of deliberate

indifference to a prisoner's serious medical needs."  *Id*. (internal quotation marks omitted).  A

deliberate medical indifference claim has objective and subjective components.  *Id*.

"Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition

of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hathaway v.*

*Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).  As to the

subjective element, an official acts with deliberate indifference when he knows of and

disregards an excessive risk to inmate health or safety.  *See Hill,* 657 F.3d at 122 (citing

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

### i.    Clinton C.F.

Plaintiff alleges that May, Kim, King, DSS, Martuscello, Moores, and OSI were

deliberately indifferent to his medical needs.  *See* Compl. at 7-8.  However, the allegations in

the complaint belie the claim.  To wit, plaintiff admits that he received medical care and

attention from May and Kim and that he was prescribed cough syrup, medication, and

underwent "breathing testing."  As presently constituted, plaintiff's allegations amount to

nothing more disagreement with defendants' course of treatment, which is insufficient to

establish an Eighth Amendment violation.  *See Washington v. Westchester Cty. Dep't of*

*Corr.,* No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled

that the ultimate decision of whether or not to administer a treatment or medication is a

medical judgment that, without more, does not amount to deliberate indifference."); *Sonds v.*

*St. Barnabas Hosp. Corr. Health Servs*., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)

("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms

of treatment, or the need for specialists or the timing of their intervention, are not adequate

grounds for a [§] 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.").

Accordingly, plaintiff's Eighth Amendment deliberate medical indifference claims related to his medical treatment at Clinton C.F. are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### ii.    Gouverneur C.F.

In light of the Court's obligation to liberally construe a pro se litigant's pleadings, defendants Woods, Coffey #1, and Coffey #2 will be required to respond to plaintiff's medical indifference claims related to his treatment at Gouverneur C.F.  This is not a ruling on the merits and the Court expresses no opinion whether these claims can survive a properly filed motion to dismiss or for summary judgment.

### 5.  Fourth Amendment

The Fourth Amendment prohibits the government from conducting unreasonable searches.  All searches conducted within a prison must be reasonable.  *See Hodges v. Stanley*, 712 F.2d 34, 35-36 (2d Cir. 1983) (citation omitted).  Courts within the Circuit have upheld routine random strip searches, including body-cavity inspections, performed on prison inmates.  *See Covino v. Patrissi,* 967 F.2d 73, 76-80 (2d Cir. 1992); *see also Hurley v. Ward*, 584 F.2d 609, 612 (2d Cir. 1978) (reversing portion of injunction prohibiting strip searches of prison inmates); *Castro-Sanchez v. N.Y. State Dep't of Corr. Servs*., No. 10-CV-8314, 2011 WL 6057837, at *9 (S.D.N.Y. Dec. 6, 2011) ("Routine random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment.").  Assessing the reasonableness of a strip search "requires a balancing of the need for the particular search

against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Bell v Wolfish*, 441 U.S. 520, 559 (1979).

An inmate bears the burden of showing that a search was unreasonable, *see Shabazz v. Pico*, 994 F.Supp. 460, 473 (S.D.N.Y. 1998), so, at the pleading stage, a plaintiff must "plead facts sufficient to give rise to a plausible inference" that the search he challenges was unreasonable under the aforementioned standards, *Simmons v. Cripps,* No. 12-CV-1061, 2013 WL 1290268, at *21 (S.D.N.Y. Feb. 15, 2013), *report and recommendation adopted by* 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013).

As the Court reads the complaint, plaintiff claims that he was stripped searched by Martin when he arrived in the SHU and that the search violated his Fourth Amendment rights. Compl. at 10.  As discussed *supra,* the Court will not engage in an analysis of any claims against individuals who are not identified as defendants in the list of parties or caption.  For that reason, the Fourth Amendment claim related to the strip search is dismissed without prejudice.

Plaintiff also makes a summary statement regarding his cell being "ransacked" by Lynch, Milsap, Constigan, and Glandeur.  *See* Compl. at 18.  The Fourth Amendment is inapplicable to the unwarranted search of an inmate's prison cell, as inmates have no reasonable expectation of privacy in such a place.  *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("hold[ing] that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell ..." and thus the Fourth Amendment does not apply to cell searches); *Demaio v. Mann*, 877 F.Supp. 89, 95 (N.D.N.Y.

1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights.") (citations omitted).

Accordingly, plaintiff's Fourth Amendment claims are dismissed without prejudice pursuant to o 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[4]

### 5. First Amendment – Access to Court

In *Bounds v. Smith*, the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. 817, 828 (1977).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury.  *See Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Konigsberg v. Lefevre*, 267 F.Supp.2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

However, "[a] hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts."  *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).  Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim.  *Lewis,* 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some

---

[4]  To the extent that plaintiff intended to assert a Fourteenth Amendment claim related to property being confiscated or discarded during the search, those claims are dismissed for the reasons set forth, *infra*.

theoretical sense").  "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F.Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that, in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher v. Harbury,* 536 U.S. 403, 415 (2002).  The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 415-16.

"Finally, . . . the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.  Rather, the injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] . . . to challenge the conditions of [his] confinement." *Id*. at 355.  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*.

Here, plaintiff claims that Hitts destroyed his personal property and, as a result, plaintiff had to "forfeit a claim" in "the state."  Compl. at 9.  Plaintiff also claims that issues with his food caused plaintiff to file a complaint in the wrong jurisdiction and interfered with plaintiff's complaint in the Western District of New York. *Id*. at 17.  These vague allegations do not support the conclusion that plaintiff suffered an "actual injury" as a result of defendants' actions.  The complaint lacks facts suggesting that plaintiff was unable to comply with court orders or that he suffered any "actual injury" in any criminal or civil actions.  Indeed, the complaint does not contain any facts or information related to the procedural posture of any pending actions. *See Taylor v. John Doe Auburn Med. ADM & Health Care Provide*r, No.

9:23-CV-0017 (TJM/ATB), 2023 WL 2806119, at *4 (N.D.N.Y. Apr. 6, 2023), *on reconsideration in part sub nom.,* 2023 WL 3275781 (N.D.N.Y. May 5, 2023).

Because the complaint lacks any suggestion that plaintiff suffered an injury to a non-frivolous legal claim concerning his criminal conviction, habeas corpus petition, or conditions of confinement, plaintiff's First Amendment claims are dismissed without prejudice.  *See Lafferty v. Virts*, No. 23-CV-358, 2024 WL 4134254, at *5 (W.D.N.Y. Sept. 10, 2024); *see also, e.g., Chalif v. Spitzer,* No. 05-CV-1355, 2008 WL 1848650, at *11 (Apr. 23, 2008) ("Since plaintiff's complaint fails to allege any prejudice in the form of interference with his pursuit of a non-frivolous legal claim, this provides an independent basis for dismissal[.]"); *Joseph v. State, Dep't of Corrs*., No. 92-CV-1566, 1994 WL 688303, at *1 (N.D.N.Y. Nov. 24, 1994) (dismissing the plaintiff's access to courts claim because the complaint "failed to allege any adverse effect caused by the alleged denial of his legal mail").

### 6.  Fourteenth Amendment Due Process

#### i.    Unwanted Injection

The Fourteenth Amendment protects the right of a competent person to refuse unwanted medical treatment.  *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (recognizing "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment").  The Second Circuit has held, "[i]t is a firmly established principle of the common law of New York that every individual of adult years and sound mind has a right to determine what shall be done with his own body and to control the course of his medical treatment." *Kulak v. City of New York*, 88 F.3d 63, 74 (2d Cir.1996) (quoting *Rivers v. Katz*, 67 N.Y.2d 485, 492 (1986)).  Such a right may be set aside only in narrow circumstances, including those where the patient "presents a danger to himself

or other members of society or engages in dangerous or potentially destructive conduct with the institution." *Kulak v. City of New York,* 88 F.3d 63, 74 (2d Cir. 1996).

At this juncture, the Court finds that the complaint contains allegations sufficient to state a Fourteenth Amendment claim against Biorefrence. *See Muhammad v. Rabinowitz*, No. 11 Civ. 2428, 2012 WL 1155098, at *4 (S.D.N.Y. Apr. 6, 2012) (the plaintiff alleged sufficient facts including the facility where he was located, the individuals involved, and the time period to support a claim of involuntary administration of medication under the Due Process Clause of the Fourteenth Amendment). In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### ii.    Property

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer,* 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed. App'x 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent - will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia,* a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Shabazz v. Pico,* 994 F.Supp. 460, 473-74 (S.D.N.Y. 1998)

(dismissing the plaintiff's claim that the defendants destroyed his property in violation of his due process rights).

For the reasons set forth herein, plaintiff's claims related to property loss are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

### 7. First Amendment Claims Related to the Grievance Process

Inmates do not have a constitutional right to state grievance programs. *See Shell v. Brzeniak*, 365 F.Supp.2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim.").

Moreover, inmates do not have a due process right to an investigation requested through a grievance. *See DeShaney v. Winnebego Soc. Servs*., 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *Torres v. Mazzurca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Inmates do not have a due process right to a thorough investigation of grievances).

Accordingly, plaintiff's claims related to the processing and investigation into his grievances and complaints, are dismissed without prejudice pursuant to 28 U.S.C. §

23

1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. State Law Claim

Plaintiff mentions in wholly conclusory fashion that he asserts a claim for intentional infliction of emotional distress. This "claim" is totally devoid of corresponding factual information, and plaintiff does not indicate how these claims arose, or what defendant, if any, might be personally involved in these alleged violations. "[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotations and alterations omitted). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Because of the complete lack of factual allegations pertaining to the state law claim, the claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

To the extent plaintiff seeks to advance a criminal murder charge against defendants, *see* Compl. at 28, such claims should be dismissed with prejudice because "[a]n individual plaintiff has no private right of action to enforce state criminal statutes." *Berger v. NYS Office for People with Developmental Disabilities*, 2016 WL 11265988, at *6 (N.D.N.Y. Nov. 8, 2016), *report and recommendation adopted,* 2017 WL 696686 (N.D.N.Y. Feb. 22, 2017) (citations omitted); *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4, n.7 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v.*

*Richard D*., 410 U.S. 614, 619 (1973)).  Only government prosecutors have the authority to bring criminal charges against someone.  If plaintiff believes he has been the victim of a crime, he should contact the appropriate law enforcement official.[5]  Accordingly, plaintiff lacks standing to request this relief.  *See id.; see also Ross v. Reed,* No. 1:13-CV-143, 2013 WL 1326947, at *2 (S.D. Ohio Mar. 5, 2013) (holding that the plaintiff is not "permitted to utilize this civil lawsuit as a vehicle to initiate any federal or ... state criminal charges.") (citing, *inter alia, Leek v. Thomas*, No. 09–3036, 2009 WL 1298499, at *3 (D.Kan. May 8, 2009) (and cases cited therein) (dismissing on screening the portion of a civil rights complaint requesting the initiation of a criminal prosecution and for disciplinary action against defendants because those matters were "beyond the authority of this court and therefore are not proper requests for relief") *report and recommendation adopted,* 2013 WL 1314735 (S.D. Ohio Mar. 28, 2013).  Therefore, this claim is dismissed with prejudice.

## IV.    MOTION FOR PRELIMINARY INJUNCTION

Plaintiff moves for an order directing Showers, McDonald, Lynch, Milsap, Constigan, Glandeur, and Carr to cease "poisoning [him]."  Dkt. No. 4 at 1, 5.  Plaintiff also seeks an order directing Woods, Coffey #1, and Coffey #2 to provide medical treatment "or investigate [the] cause for complaints," and prevent defendants from asking questions only [without] investigation" or directing defendants to "test [for] infection."  *Id*.  Plaintiff also seeks an order directing Hutchins to "stop depriving [him] of his right to complain or petition[.]"  *Id*. at 5. Plaintiff also moves for an order directing Rockwood to release plaintiff from custody.  *Id.*

---

[5]  If plaintiff believes the crime is a violation of federal law, he should contact the United States Attorney's Office for the district in which the crime is alleged to have occurred.  If plaintiff believes the crime is a violation of state law, he should contact the police or the District Attorney's Office for the county in which the crime is alleged to have occurred.

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "[T]his circuit has required a party seeking a preliminary injunction to show: (a) irreparable harm and (b) either (1) a substantial likelihood of success on the merits of the claim, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 38 (2d Cir. 2010) (internal quotation marks omitted). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2011). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts.,* 598 F.3d at 35 n.4 (internal quotation marks omitted). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Moore,* 409 F.3d at 511.

"To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Levesque v. Clinton Count*y, No. 10-CV-787 (DNH/DEP), 2012 WL 6948779, at *11 (N.D.N.Y. Dec. 28, 2012) (citing *inter alia Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)) (holding that a preliminary injunction may not be issued to prevent an injury or harm which was not caused by the wrong claimed in the

underlying action); *see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application were unrelated to claims asserted in the complaint and, thus, plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" him).

As plaintiff seeks a mandatory injunction, he must meet the higher standard and establish a clear or substantial likelihood of success of show that extreme or very serious damage would result in the absence of the requested relief.  *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 34 (2d Cir. 1995).  Plaintiff's motion is denied for the following reasons.

### A.  Relief Related to "Poisoning"

The relief that plaintiff seeks, directing an official to stop poisoning him, is, in essence, a request that this official obey the law.  "Obey the law" injunctions are vague, do not require a defendant to do anything more than that already imposed by law, subject the defendant to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement.  As such, these injunctions are not favored.  *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941); *see also Rowe v. New York State Division of Budget*, No. 1:11-CV-1150 (LEK/DRH), 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 17, 2012); *New York v. Shinnecock Indian Nation*, 560 F.Supp.2d 186, 189 (E.D.N.Y. 2008).  According to the Second Circuit, " '[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.' "  *S.C. Johnson & Son, Inc. v. Clorox Co*., 241

F.3d 232, 240 (2d Cir. 2001) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)).

### B. Relief Related to Medical Care

"[R]equest[s] for injunctive relief must be supported by evidence, as opposed to mere allegations, showing that the alleged irreparable harm is imminent." *Hall v. Annucci*, No. 19-CV-5521, 2021 WL 4392526, at *14 (S.D.N.Y. Sept. 24, 2021) (citing *inter alia Perkins v. Rock*, No. 12-CV-1269, 2013 WL 4781762, at *2 (N.D.N.Y. Sept. 5, 2013) (noting that a plaintiff's request for preliminary injunctive relief was appropriately denied where the plaintiff's allegations of harm were "purely speculative" and unsupported "by any evidence, such as exhibits, medical reports, affidavits from other inmates, or any other proof").

While plaintiff seeks an order directing defendants to provide medical attention, *see* Dkt. No. 1, at 1, the motion lacks any specific facts demonstrating the likelihood of future harm. Plaintiff has not provided any documentation, exhibits, or any other evidence to support his Eighth Amendment deliberate medical indifference claims. Plaintiff's concerns are "unsubstantiated" and "speculative" and cannot form the basis for injunctive relief. *Louis v. Morley*, No. 22-CV-10094., 2024 WL 4573677, at *3 (S.D.N.Y. Oct. 24, 2024) "[The court cannot simply order adequate medical care or constitutional conditions of confinement, because '[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.' " *Smith v. Halstead*, No. 7:24-CV-6855, 2024 WL 4389284, at *3 (S.D.N.Y. Oct. 3, 2024) (citation omitted). Moreover, plaintiff's allegations related to defendants' refusal to "test for cancer" amount to nothing more than a disagreement over the course of treatment, and cannot form the basis for a colorable § 1983 claim. *See Tolbert v. Koenigsmann*, No. 9:13-CV-1577 (LEK/DEP), 2016 WL 3349317, at *4 (N.D.N.Y. June 15,

2016) (denying request for preliminary injunctive relief based upon the plaintiff's "issues" with the defendants' medical judgment).

On this ground, plaintiff's request is denied, without prejudice.  *See Hall*, 2021 WL 4392526, at *14 (noting that if the plaintiff wishes to renew his request for injunctive relief, he should provide the Court with medical records, affidavits, or other documentary evidence in support of his theory that the defendants' actions presented a risk of irreparable harm).

### C.  Relief Against Hutchins

First, as noted *supra*, the remaining defendants are Constigan, Glandeur, Carr, Showers, Milsap, McDonald, Hull, Rockwood, and McCormick; and (2) Eighth Amendment deliberate medical indifference claims against Woods, Coffey #1, and Coffey #2.  To the extent that plaintiff seeks injunctive relief against Hutchins, or any party not named as a defendant, that request is denied.  A request for injunctive relief against non-parties is available only under very limited circumstances, none of which are clearly present here.  *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988*); see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Second, with regard to plaintiff's request for an order affording him the "right to complain or petition," *see* Dkt. No. 4 at 5, these events bear no relationship to the underlying claims that remain in this action.  *See Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) ("To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion

and the conduct giving rise to the complaint.") (internal quotation marks and citations omitted); *see also Scarborough v. Evans*, No. 9:09-CV-0850 (NAM/DEP), 2010 WL 1608950, at *2 (N.D.N.Y. Apr. 20, 2010) (motion for preliminary injunction alleging use of excessive force and denial of medical care by non-parties denied where complaint alleged denial of mental health care and proper conditions of confinement); *Lewis v. Johnston*, No. 9:08-CV-0482 (TJM/ATB), 2010 WL 1268024, at *3 (N.D.N.Y. Apr. 1, 2010) (denying motion for injunctive relief based upon actions taken by staff at Great Meadow Correctional Facility in 2010, where the complaint alleged wrongdoing that occurred at Franklin and Upstate Correctional Facilities in 2006 and 2007); *Mitchell v. New York State Dep't of Corr. Servs.*, No. 06-CV-6278, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (denying plaintiff's request for preliminary injunctive relief because "the facts underlying the request for injunctive relief [were] essentially unrelated to the underlying facts of the claims in this action, except for the fact that they arise in the prison context"); *McClenton v. Menifee*, No. 05-CV-2844, 2006 WL 2474872, at *17 (S.D.N.Y. Aug. 22, 2006) (denying motion for preliminary injunction where the underlying claim "[was] not included in the complaint and there [was] no showing that the plaintiff [had] exhausted his administrative remedies with respect to [that] claim").

### D. Release from Custody

"Release from custody only may be obtained by a writ of habeas corpus." *Anderson v. Connecticut Superior Ct.*, No. 3:01 CV 2214, 2003 WL 203152, at *3 (D. Conn. Jan. 26, 2003) (holding that "[a] state prisoner may not bring a civil rights action in federal court under [section] 1983 to challenge either the validity of his conviction or the fact or duration of his confinement."). Accordingly, this portion of plaintiff's motion is denied.

30

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP application (Dkt. No. 6) is **GRANTED**.[6]  The Clerk shall provide the superintendent of the prison facility in which plaintiff is currently confined with a copy of plaintiff's inmate authorization form (Dkt. No. 3) and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee $350.00 pursuant to 28 U.S.C. § 1915;[7] and it is further

**ORDERED** that the Clerk shall provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that plaintiff's claims the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted: (1) claims against Gallagher; (2) First Amendment claims related to religious freedom; (2) Eighth Amendment claims related to plaintiff's conditions of confinement at Clinton C.F.; (3) Eighth Amendment deliberate medical indifference claims related to plaintiff's treatment at Clinton C.F.; (4) Fourth Amendment claims; (5) Fourteenth Amendment property claims; (6) First Amendment access-to-court claims; (7) claims related to the grievance process; and (8) state law claims [8]; and it is further

---

[6]  Plaintiff should note that, although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[7]  While Section 1915 permits indigent litigants to commence a civil action in federal court without prepayment of the filing fee, those litigants "must subsequently pay the fee, to the extent [they are] able to do so, through periodic withdrawals from [their] inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris*, 607 F.3d at 21).

[8]  Should plaintiff seek to pursue a claim dismissed without prejudice by the Court herein, he must file an amended complaint.  Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction.  Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil

**ORDERED** that the following claims survive review and require a response: (1) Eighth Amendment condition-of-confinement claims against Constigan, Glandeur, Carr, Showers, Milsap, McDonald, Hull, Rockwood, and McCormick; (2) Eighth Amendment deliberate medical indifference claims against Woods, Coffey #1, and Coffey #2; and (3) Fourteenth Amendment claims against Biorefrence and Harrigan; and it is further

**ORDERED** that the Clerk of the Court shall terminate the following defendants from the Docket Report:  Kim, King, Security Superintendent Deputy, Moores, Martuscello, Friend, Hitts, May, OSI, Minkler, Lynch, Hutchins, and Gallagher; and it is further

**ORDERED** that, upon receipt of the documents for service, the Clerk shall issue summonses and forward them, along with a copy of the complaint, to the United States Marshal for service upon the defendants.  The Clerk shall forward a copy of the summons and complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that defendants or counsel, shall file a response to the complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by**

---

Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

**the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action;** and it is further

ORDERED that plaintiff's motion for preliminary injunctive relief (Dkt. No. 4) is **DENIED** without prejudice to renew; and it is further

ORDERED that the Clerk provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

ORDERED that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

Dated: January 21, 2026

Brenda K. Sannes
Chief U.S. District Judge